### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

JUSTIN R. BELISLE,

        *Plaintiff*,

vs.

BNSF RAILWAY COMPANY,

        *Defendant.*

Case No. 08-2087-EFM

### MEMORANDUM AND ORDER

Presently before the Court is Defendant BNSF Railway Company's ("BNSF") Motion for Summary Judgment (Doc. 151), with respect to certain claims alleged by Plaintiff Justin R. Belisle ("Belisle"). For the following reasons, the Court grants in part, and denies in part, Defendant's motion.

### I. Background

The following facts are either uncontroverted or taken in the light most favorable to the non-moving party.

Belisle brings this action pursuant to the Federal Employer's Liability Act ("FELA"),[1] claiming that BNSF negligently failed in a number of ways to furnish and provide him with a reasonably safe place to work, reasonably safe methods for work, reasonably safe conditions for

---

[1] 45 U.S.C. § 51 *et seq.*

-1-

work, and reasonably safe appliances for work. On March 3, 2007, Belisle was employed by BNSF as a brakeman for a train that was preparing to depart its Newton, Kansas yard. As part of his duties, Belisle was assigned the task of preparing the end of the train for departure, which included, among other tasks, the installation, arming, and testing of a turbine powered end-of-train device ("ETD"), which attaches to the last car on the train. To test this particular ETD's ability to detect and report a simulated emergency to the engineer, Belisle had to let out the bottled air in the last one or two cars of the train. To release this air required Belisle to walk from the end of the train to where the last couple of cars connect to the rest of the train. From that position, Belisle could manually turn the valve to shut air flow to the last one or two cars.

The train on which Belisle was working was parked on one of two east-west main track lines located on the north side of BNSF's Newton yard ("Main 2"). The other main track line ("Main 1") was located north of Main 2. The speed limit for trains traveling on these tracks is 50 miles per hour. When both tracks are occupied by trains, the clearance in-between is approximately 58 inches, creating a potential danger zone between the trains.

Belisle and the other crew members were notified by their supervisor that an eastbound train would be approaching the area in which they were working. Belisle contends that the assistant train master informed the crew that the approaching train on Main 1 would be held while Belisle and the crew prepared the train for departure, and then the approaching train would replace his train on Main 2.[2] However, while working on or near the train on Main 2, a train approached on Main 1, passing the train on Main 2 at approximately 50 mph, striking Belisle as it passed. As a result, Belisle suffered extensive injuries.

---

[2]BNSF disputes that Belisle or the other crew members were ever told the train would be held.

## II. Summary Judgment Standard

The Court is familiar with the standards governing the consideration of Summary Judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."[3] An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[4] A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim.[5] In considering a motion for summary judgment, the Court must examine all of the evidence in a light most favorable to the nonmoving party.[6]

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to summary judgment.[7] The moving party is not required to disprove the nonmoving party's claim or defense, but must only establish that the factual allegations have no legal significance.[8] If this initial burden is met, the nonmovant must then set forth specific facts showing that there is a genuine issue for trial.[9] In doing so, the opposing party may not rely on mere allegations or denials in its pleadings, but must present significant admissible probative evidence

---

[3] Fed. R. Civ. P. 56©).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003).

[5] *Id.*

[6] *Harrison v. Wahatoyas, LLC*, 253 F.3d 552, 557 (10th Cir. 2001).

[7] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[8] *Dayton Hudson Corp. v. Macerich Real Estate Co.*, 812 F.2d 1319, 1323 (10th Cir. 1987).

[9] *Celotex*, 477 U.S. at 323.

supporting its allegations.[10] The Court is also cognizant that it may not make credibility determinations or weigh the evidence when examining the underlying facts of the case.[11]

Finally, the Court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action."[12]

### III. Analysis

BNSF argues that the Federal Railroad Safety Act ("FRSA")[13], and the regulations promulgated under it by the Federal Railroad Administration ("FRA"), supercede and preclude a number of Belisle's negligence claims as set forth in his Complaint. Specifically, BNSF contends that all of Belisle's claims premised on train speed, track protection, or main line ballast are precluded, and therefore, the Court should limit any argument at trial premised on these theories. In addition, BNSF argues that Belisle's allegation that it violated FRA regulation 49 C.F.R. § 221.16(b) by requiring the installation of an ETD on a train while parked on a main line should be dismissed, as that statute is inapplicable to the facts of this case.

Belisle counters by asserting that BNSF has failed to grasp the essence of his claims, and BNSF's preclusion arguments do not apply. Belisle argues that he is not simply alleging that the train violated the speed limit or that there was improper main line ballast, but instead, is alleging that BNSF failed to provide him with a safe workplace in which to perform his job. Belisle argues that

---

[10]*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

[11]*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

[12]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

[13]49 U.S.C. § 20103 *et seq.*

BNSF required him to install and test an ETD on his train while it was parked on a main track (Main 2) that was in close proximity to another main track (Main 1) when BNSF knew that this work could only be done safely if no other train traffic was present. Further, Belisle argues that after BNSF specifically informed him that there would be no train traffic on Main 1 while he was preparing his train, it allowed a train to proceed past his work area on Main 1. Belisle contends that his claims under the FELA are not in conflict with the FRSA, and summary judgment is unwarranted.

Belisle concedes that FRA regulation 49 C.F.R. § 221.16(b) is inapplicable to this case, and accordingly, dismissal of that claim is appropriate.

### *a. Claims related to negligent train speed and handling*

BNSF argues that Belisle is precluded from bringing any claim in which he alleges injury because of excessive speed when the train was not exceeding the speed limit established by the FRSA. BNSF, therefore, asserts that, to the extent that Belisle's claims allege unsafe or excessive train speed, they are precluded by the FRSA, and should be limited accordingly. Belisle argues that BNSF misconstrues his claims. BNSF's failures stem from its allowing Belisle to perform work on a main line, when instead, it should have been performed in the yard. In addition, it failed to protect Belisle as it had indicated it would, and further, the dispatchers failed to hold the train from approaching his position after Belisle was instructed him that would be the case. Belisle contends that his claims relate to the reasonableness of BNSF's acts on the night of the incident, and not to the speed of the train. We agree.

BNSF asserts that the following allegations in Belisle's Complaint relate to excessive speed and are preempted by the FRSA:

11. Defendant negligently:

    b. Allowed a train to approach plaintiff on Main 1 while plaintiff was installing the EOT device;

    e. Failed to stop the approaching train before it reached plaintiff;

    f. Allowed the approaching train to strike him;

    g. Operated the approaching train in a manner that allowed it to strike plaintiff;

    i. Failed to reduce the speed of the train on Main 1 so that it could stop before hitting plaintiff;

    j. Failed to provide for reasonable coordination and control for the movement of trains around and through the Newton yard;

    m. Failed to reasonably promulgate, follow, and enforce reasonable rules, customs, practices, policies and procedures for

        (iii). Coordination and control of train movements on the main lines while workers are installing EOT devices;

    n. Failed to reasonably train, educate, and instruct its officers, agents, and employees in the foregoing rules, customs, practices, policies, and procedures.[14]

The section of the FRSA to which BNSF refers, 49 U.S.C. § 213.9, sets the maximum allowable speed limit for passenger and freight trains for each class of track on which a train may operate. Here, neither party argues that the train that struck Belisle was traveling at a speed greater than that permitted by the statute, and contrary to BNSF's assertion, Belisle is not alleging that BNSF was negligent solely for permitting the train to travel at any particular speed. Instead, Belisle is alleging, based on representations he claims BNSF made to him prior to beginning his work, BNSF negligently failed to take appropriate steps to prevent Belisle from being struck by the train. While

---

[14] BNSF specifically identified claims set forth in paragraph 11 (b), (e), (f), (g), (I), (j), (m)(iii), and (n), and we limit our review to these subsections at this stage of this opinion.

the Court is cognizant of the potential for Belisle to introduce evidence in such a manner so as to infer negligence based on the train's speed, summary judgment is not the appropriate method for controlling the presentation of evidence to a jury.  Rather, BNSF's desire to have the Court limit or control how Belisle presents his evidence should be addressed through a Motion in Limine prior to trial.

### *b.  Claims related to additional track protections*

BNSF asserts that Belisle is precluded from bringing any claim related to track protection and worker safety because such claims are precluded by 49 C.F.R. §§ 214, 218, and 221.  BNSF argues that Belisle's position was specifically excluded from the statute's applicability, and therefore, he is not entitled to its protections.  Belisle agrees that he does not fall within the provisions of these regulations; however, he contends that the purpose of these specific sections are to protect the work performed by a railroad's maintenance-of-way department.  Rather than precluding Belisle's claim, the sections simply do not apply to the present situation.

BNSF asserts that the following allegations in Belisle's Complaint are precluded by 49 C.F.R. §§ 214, 218, and 221, in which he asserts BNSF negligently:

>   b. Allowed a train to approach plaintiff on Main 1 while plaintiff was installing the EOT device;
> 
>   d. Failed to protect plaintiff from the approaching train that struck him;
> 
>   e. Failed to stop the approaching train before it reached plaintiff;
> 
>   l. Violated the Federal Railroad Administration regulation prohibiting installation of EOT devices on main lines; see, 49 C.F.R. §221.16(b)(when EOT devices are being inspected on main lines, "the inspection task shall be limited to ascertaining that the marker is in proper operating condition");

      m.      Failed to reasonably promulgate, follow, and enforce reasonable rules, customs, practices, policies and procedures for

          (i). installation of EOT devices at the Newton yard;

          (ii). Protection of workers installing EOT devices in the Newton yard;

          (iii). Coordination and control of train movements on the main lines while workers are installing EOT devices.[15]

We agree with the parties in that 49 C.F.R. §§ 214, 218, and 221 do not apply to the work Belisle was performing at the time of this incident. However, we do not agree that these provisions preclude Belisle's claims as alleged. The Court is not inclined to interpret these provisions as occupying the entire field of railroad safety and practice so as to prevent Belisle from bringing his claims based on the facts of this specific case. Therefore, we find that Belisle's allegations as set forth in his Complaint, with the exception of paragraph 11(l), are not precluded under these provisions, and accordingly, we deny summary judgment for these claims.

     Belisle does not dispute that 49 C.F.R. §221.16(b) is inapplicable to this case. Therefore, we grant summary judgment in BNSF's favor with respect to paragraph 11(l) of Belisle's Complaint.

### *c. Claims relating to improper ballast and footing*

     BNSF argues that the Court should dismiss Belisle's claims to the extent that they are premised upon unsafe or improper ballast and footing alongside the tracks, as claims of this nature are precluded by 49 C.F.R. § 213.103.[16] BNSF suggests that although Belisle has not specifically

---

[15] Docs. 1, ¶ 11; 152 p. 20.

[16] 49 C.F.R. § 213.103 provides:
Unless it is otherwise structurally supported, all track shall be supported by material which will --

(a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;

(b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by

alleged in his Complaint that it was negligent because of unsafe footing or ballast, Belisle's proffered experts have suggested that the mainline ballast upon which Belisle was working may have inhibited his ability to avoid the accident.  Belisle counters by arguing that he is not making claims of negligence based on improper ballast or footing.  Rather, any evidence relating to ballast and footing simply explains the difficulty Belisle may have had in escaping from the path of the approaching train, and such evidence is not precluded.

The Court does not find that any of Belisle's claims imply negligence on BNSF based on unsafe or improper footing or ballast so as to be precluded by 49 C.F.R. § 213.103; therefore, we deny summary judgment.

Accordingly,

**IT IS THEREFORE ORDERED** that Defendant BNSF's Motion for Summary Judgment (Doc. 151) is hereby GRANTED in part, and DENIED in part.

**IT IS SO ORDERED.**

Dated this 24th day of June, 2009, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

railroad rolling equipment and thermal stress exerted by the rails;

©) Provide adequate drainage for the track; and

(d) Maintain proper track crosslevel, surface, and alinement.