# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JUSTIN R. BELISLE

        *Plaintiff*,

vs.                                Case No. 08-2087-EFM

BNSF RAILWAY COMPANY,

        *Defendant*.

## MEMORANDUM AND ORDER

On March 3, 2007, Belisle was employed by BNSF as a brakeman for a train that was preparing to depart its Newton, Kansas yard. As part of his duties, Belisle was assigned the task of preparing the end of the train for departure, which included, among other tasks, the installation, arming, and testing of a turbine powered end-of-train device ("ETD"), which attaches to the last car on the train. The train on which Belisle was working was parked on one of two east-west main track lines located on the north side of BNSF's Newton yard ("Main 2"). The other main track line ("Main 1") was located north of Main 2. While working on or near the train on Main 2, a train approached on Main 1, passing the train on Main 2 at approximately 50 mph, striking Belisle as it passed.[1] As a result, Belisle suffered extensive injuries.

---

[1] The speed limit for trains traveling on these tracks is 50 miles per hour.

Belisle brought this action against BNSF pursuant to the Federal Employer's Liability Act, ("FELA"),[2] claiming that BNSF negligently failed in a number of ways to furnish and provide him with a reasonably safe place to work, reasonably safe methods for work, reasonably safe conditions for work, and reasonably safe appliances for work.  Now before the Court are: (1) Plaintiff's Motion to Exclude the Opinion Testimony of John Michael and John Parmalee (Doc. 262); (2) Plaintiff's Motion to Exclude Marc Sanders, Ph.D. (Doc. 266); and (3) Plaintiff's Motion to Exclude Richard VanWagner and Randy Valencia (Doc. 268).  Also before the Court are Defendant's Second Motion in Limine (to exclude the testimony of Plaintiff's experts Mariusz Ziejewski and Paul Bodnar) (Doc. 144), and Defendant's Motion to Bifurcate (Doc. 197).  We will address each in turn.

## I. STANDARD

Rule 701 of the Federal Rules of Evidence governs the admissibility of lay witness opinions. Under Rule 701, opinion testimony of lay witnesses is permissible if the opinions are (1) rationally based on the perception of the witness; (2) helpful to the determination of a fact in issue; and (3) not based on scientific, technical, or specialized knowledge.[3]  Opinions based on scientific, technical, or specialized knowledge are governed by Rule 702.  Rule 702 provides that a witness who is qualified by knowledge, skill, experience, training, or education (called an "expert witness") may testify in the form of opinion or otherwise as to scientific, technical or other specialized knowledge if such testimony will assist the trier of fact to understand the evidence or to determine a fact in issue, "if, (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods

---

[2]45 U.S.C. § 51 *et seq.*

[3]Fed. R. Evid. 701.

reliably to the facts of the case."[4]  A district court has broad discretion in deciding whether to admit expert testimony.[5]

The proponent of expert testimony must show "a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation."[6]  To determine whether an expert opinion is admissible, the Court performs a two-step analysis.  First, the Court must determine "if the expert's proffered testimony ... has 'a reliable basis in the knowledge and experience of his discipline.' "[7] The Court must then inquire into whether the proposed testimony is sufficiently "relevant to the task at hand."[8]  An expert opinion "must be based on facts which enable [him] to express a reasonably accurate conclusion as opposed to conjecture or speculation ... absolute certainty is not required."[9]

> The plaintiff need not prove that the expert is undisputably correct or that the expert's theory is "generally accepted" in the scientific community.  Instead, the plaintiff must show that the method employed by the expert in reaching the conclusion is scientifically sound and that the opinion is based on facts which sufficiently satisfy Rule 702's reliability.[10]

*Daubert* sets forth a non-exhaustive list of four factors that the trial court may consider when conducting its inquiry under Rule 702: (1) whether the theory used can be and has been tested; (2)

---

[4]Fed. R. Evid. 702.

[5]*Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996) (citing *Orth v. Emerson Elec. Co., White-Rodgers Div.*, 980 F.2d 632, 637 (10th Cir. 1992)).

[6]*Mitchell v. Gencorp Inc.*, 165 F.3d 778, 780 (10th Cir. 1999).

[7]*Norris v. Baxter Healthcare Corp.*, 397 F.3d 878, 884 (10th Cir. 2005) (quoting *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993)).

[8]*Id.* (quoting *Daubert*, 509 U.S. at 597).

[9]*Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003).

[10]*Bitler v. A.O. Smith Corp.*, 400 F.3d 1227, 1233 (10th Cir. 2004).

whether it has been subjected to peer review and publication; (3) the known or potential rate of error; and (4) general acceptance in the scientific community.[11]  These factors may or may not be pertinent, depending on the nature of a particular issue, the expert's particular expertise, and the subject of the expert's testimony; however, the Court may consider these factors where they are a reasonable measure of reliability, which is a consideration the Court has broad latitude to determine.[12]  It is within the discretion of the trial court to determine how to perform its gatekeeping function under *Daubert*.[13]  The most common method for fulfilling this function is a *Daubert* hearing, although such a process is not specifically mandated.[14]  Here, neither party has indicated that such a hearing is necessary, and after carefully reviewing the motions and exhibits, the Court believes a hearing is not required in all cases to render our decision.[15]

---

[11]*Daubert*, 509 U.S. at 593-94.

[12]*Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 153 (1999).

[13]*Goebel v. Denver & Rio Grande W. R.R.*, 215 F.3d 1083, 1087 (10th Cir. 2000).

[14]*See United States v. Charley*, 189 F.3d 1251, 1266 (10th Cir. 1999) (district court granted great latitude in deciding whether to hold formal hearing), cert. denied, 528 U.S. 1098 (2000); *United States v. Call*, 129 F.3d 1402, 1405 (10th Cir. 1997) (Daubert does not require hearing).

[15]Plaintiff has also moved to exclude the testimony of Defendant's designated experts William F. Kennedy and Brad C. Mathison (Doc. 264), and Defendant has moved to exclude the testimony of Jimmy Scott, one of Plaintiff's designated experts (Doc. 145).  Defendant identified Kennedy as its accident reconstruction expert. Kennedy has submitted two expert reports, and has adopted certain findings in a supplemental disclosure filed by Defendant's counsel.  Due to apparent errors and/or discrepancies between his reports, the Court is unclear as to Kennedy's final opinion and the methodology he employed in reaching his conclusions, necessitating a *Daubert* hearing.  Plaintiff designated Mathison as an expert hired to develop animations.  It appears that Mathison based his animations at least in part on Kennedy's conclusions.  The extent to which he relied on Kennedy's conclusions, however, is unknown, and as a result, the Court is unable to assess the reliability of said animations.  Plaintiff retained Scott to opine on railroad operating practices.  While Scott has experience working for another railroad, the Court is unable to determine, absent a *Daubert* hearing, how Scott's qualifications and experience working for another railroad adequately relate to the procedures employed by Defendant and its employees to permit his testimony.  Thus, a *Daubert* hearing has been set for March 25-26, 2010 to address these motions.

# II. ANALYSIS

## 1. Plaintiff's Motion to Exclude the Opinion Testimony of John Michael and John Parmalee

Plaintiff moves to exclude the testimony of John Michael, an individual that Defendant has identified in its Fed. R. Civ. P. 26(a) disclosures as a fact witness. Plaintiff claims that Defendant identified Michael to provide testimony not based on any first hand knowledge of Plaintiff or his treatment, but rather, intends to offer testimony on the availability of prosthetic devices after reviewing Plaintiff's medical records. Plaintiff contends that Michael's proposed testimony relates to specialized knowledge in the field of prosthetics, and because he was not properly identified and disclosed as an expert, Plaintiff cancelled Michael's scheduled deposition.[16] Plaintiff argues that because Defendant intends to have Michael testify on the subject of prosthetic devices and not on any facts at issue relating to this incident or to Plaintiff that are based on his first-hand knowledge, he would be providing expert opinion testimony governed by Rule 702, and subject to the requirements of that rule including proper, advance disclosure of expert testimony.

Plaintiff also moves to exclude the testimony of John Parmalee, whom Defendant has identified in its Rule 26 disclosures as a fact witness testifying with regard to life care analysis and annuities. Plaintiff essentially makes the same arguments as with Michael. Plaintiff argues that Parmalee attended the mediation process in this case on behalf of Defendant as its structured settlement expert, and asserts that he has no first hand information about this case. Plaintiff contends that, on the basis of Defendant's Rule 26 disclosure, Parmalee's testimony will concern

---

[16]Plaintiff argues that as additional proof that Michael is an expert witness, upon cancellation of the deposition, Michael submitted an invoice for payment of one-day's professional service for $2,400, payable to CPO Services, Inc. from Portage, Indiana. Plaintiff asserts that a fact witness is only entitled to payment a of $40 attendance fee and other minimal reimbursements under 28 U.S.C.§ 1821, and claiming professional fees is clear indication that his testimony is that of an expert.

life care analysis and annuities, which clearly indicates Defendant's intend to illicit opinions subject to Rule 702. Because Parmalee has not been identified as an expert, Plaintiff claims his opinion testimony should be excluded.

Defendant contends that Plaintiff's motion to exclude Michael and Parmalee is premature because Plaintiff failed to depose either individual and because they have not been identified as expert witnesses. Defendant suggests that because Plaintiff has no idea what either may say, he is in effect raising an evidentiary objection at this point based only on speculation. Defendant represents that Michael nor Parmalee "will not be offering 'opinion' testimony subject to Rules 701 or 702." But, at the same time, Defendant seems to assert that it just might do that at trial, claiming that it is aware of the requirements of Rules 701 and 702, and "[i]f, at trial, any 'opinions,' expert or otherwise, are offered, plaintiff can voice a timely and specific objection at the proper time."[17] Defendant claims that because Plaintiff has the ability to object at trial, barring Michael's or Parmalee's testimony would be inappropriate.

Defendant's Rule 26 disclosures indicate that Michael's testimony will focus on prosthetic devices. Notwithstanding Plaintiff's assertions that Michael has no factual knowledge of Plaintiff or his treatment, and to which Plaintiff claims Defendant agrees, Defendant maintains that Michael is a fact witness whose testimony concerning prosthetics will not come within the purview of Rule 702. The Court, however, is not convinced that testimony related to the prosthetics available for *this* Plaintiff's use, which testimony would be based on Michael's review of Plaintiff's medical records, can be based on anything but Michael's specialized knowledge of the particular prosthetic devices. Thus, such testimony would be subject to Rule 702. Because Defendant has failed to identify

---

[17]Doc. 291, p.5 (Defendant's Response to Plaintiff's Motion to Exclude).

Michael as an expert witness, such testimony will not be permitted.

To the extent that Michael would be able to provide relevant testimony concerning prosthetics within this limitation (i.e., available prosthetic devices not based on a review of Plaintiff's medical records), and to the extent that such testimony would be relevant under Rule 402,[18] is yet to be determined. Because neither party has identified specific testimony that Defendant intends to illicit from Michael at trial, we are unable to make any further determination with regard to the relevancy of his testimony.[19] Therefore, we are not inclined to preclude Michael's testimony entirely at this time; rather, we will address any relevancy arguments during this case's in limine conference, currently set for May 5, 2010.

Concerning Parmalee, Defendant's Rule 26 disclosure indicates that Defendant intends his testimony to focus on life care analysis and annuities. Other than to assert that Parmalee's testimony will not invade the relevant "opinion" sections of Rules 701 or 702, Defendant provides no explanation as to how Parmalee will testify on these subjects without basing his opinions on some form of specialized knowledge, which is clearly required to provide some form of foundation and reliability to his testimony on these topics. It is, therefore, inconceivable how any testimony by Parmalee related to a life care plan or annuities can be based on anything but Parmalee's specialized knowledge of those topics, and therefore, subject to Rule 702. The Court is inclined to agree with Plaintiff that it appears that Defendant's identification of Parmalee as a fact witnesses appears to be nothing more than an attempt to "evade the expert witness disclosure requirements set forth in Fed.

---

[18]Fed. R. Evid. 402.

[19]While Defendant maintains here that Michael is nothing more than a fact witness, Michaels' fee request makes the Court skeptical that he was intended to be anything but an expert witness subject to Rule 702, and not 701.

R. Civ. P. 26 . . . by simply calling an expert witness in the guise of a layperson."[20]  The Court

concludes that the nature of any testimony Parmalee would be capable of presenting to a jury would

be in the form of expert testimony subject to Rule 702.  Because Defendant has failed to identify

Parmalee as an expert witness, Plaintiff's motion to exclude the testimony of Parmalee is granted.

### 2. Plaintiff's Motion to Exclude Expert Testimony of Mark Sanders

Defendant has identified Mark Sanders, Ph.D., as its human factors expert.  Plaintiff does

not challenge Dr. Sanders' qualifications to testify as an expert in the field of human factors, nor

does he allege that the issues presented here are not within Dr. Sander's expertise.  Instead, Plaintiff

challenges the reliability of the methodology Dr. Sanders employed in reaching his conclusions,

raising a number of arguments that the Court will address in turn.  Because Plaintiff does not contest

Dr. Sanders' qualifications as a human factors expert, we need only inquire into the reliability of Dr.

Sanders' methodology.[21]

After conducting a human factors analysis, Dr. Sanders opined that Plaintiff had sufficient

time and information to have moved to a place of safety before the train arrived at the location in

which he was standing.  Plaintiff first contends that Dr. Sanders' conclusions fail to meet the

standards for admissibility under Rule 702 because they are based on his own accident

reconstruction analysis, which he is not qualified to perform.  Plaintiff argues that a significant

portion of Dr. Sanders' report is devoted to placing the train and people at specific points along the

railway at specific times, along with identifying the place and time certain actions, such as whistle

---

[20]Fed. R. Evid. 701 advisory committee's note.

[21]*See Norris,* 397 F.3d at 884.  It would appear that by arguing that Dr. Sanders is not qualified as an accident reconstructionist, Plaintiff is challenging Dr. Sanders' qualifications as an expert.  However, as will be discussed later in this opinion, Dr. Sanders did not conduct his own independent accident reconstruction, and thus, we need not address whether he was qualified to perform such an analysis.

sounds, took place. Plaintiff asserts that this type of analysis is accident reconstruction, which Dr. Sanders is not qualified to perform.

Plaintiff also contends that Dr. Sanders completed an improper reconstruction analysis by failing to account for the curve in the tracks when he concluded that the lights reflecting on the rails of Main 1 would have been a clear indication to Plaintiff that the train was on Main 1. Plaintiff claims that there is no dispute that the train illuminated the rails of Main 2 as it entered the curve before illuminating the rails of Main 1, which could have caused Plaintiff to believe the train was not on Main 1 until much later. Plaintiff also questions Dr. Sanders' placement of Plaintiff on the tracks looking west towards the train, claiming there are no facts substantiating such an assumption.

Defendant responds by pointing to Dr. Sanders' deposition testimony in which he stated that he did not perform an independent reconstruction of the accident, but instead, relied on the reports of Kennedy and Plaintiff's experts, Dr. Jeffrey Ball and Gary Bakken, for time and distances, along with the sheriff's department accident report and other documents as identified in his expert report. Defendant contends that, as a result, Dr. Sanders developed an informed opinion by evaluating expert reports reconstructing the accident along with other factual data describing the event, which meets the standard of Rule 703.[22] Defendant further asserts that Dr. Sanders' assumptions placing Plaintiff on or near Main 1 facing west was also based on sufficient reliable facts, identifying a number of witness depositions placing Plaintiff standing on or near the track facing the direction of the oncoming train with his hands over his ears. Accordingly, Defendant posits that Dr. Sanders' opinion is sufficiently reliable to allow his testimony at trial.

---

[22]Fed. R. Evid. 703.

As part of the Court's evaluation, we must determine whether Dr. Sanders' expert opinion is based on facts that enable him to express a reasonably accurate conclusion as opposed to one based on mere conjecture or speculation.[23] An expert's qualifications are relevant to that inquiry.[24] During his deposition, Dr. Sanders denied conducting an independent reconstruction analysis, but stated that he relied on the expert reports of Kennedy, Ball, and Bakken for distances and time, along with other expert reports and documentation provided to him by Defendant. It does not appear from Dr. Sanders report and testimony that he did anything more than use the opinions of the reconstruction experts to formulate his human factors opinion. These form a sufficient factual basis to permit Dr. Sanders to place Plaintiff on or near the tracks as he described. While a number of these facts may be in dispute, such as the actual location of the point of impact (POI), those issues go to the weight of Dr. Sanders' opinion and not to its admissibility. The fact that experts may have differing opinions does not warrant exclusion.[25]

Plaintiff also challenges Dr. Sanders' opinion based on his placement of the POI and his reliance upon that positioning in his analysis. Plaintiff's expert Dr. Ball disagrees with Dr. Sanders' POI location, and in addition, opines that Dr. Sanders' accident reconstruction conclusions are incorrect. Defendant, however, asserts that Dr. Sanders placed the POI not by his own reconstruction efforts but on the facts that were made known to him by Defendant and by those documents identified in his report. Defendant suggests that disagreements between experts is not

---

[23]*See Kieffer v. Weston Land, Inc.*, 90 F.3d 1496, 1499 (10th Cir. 1996).

[24]*In re Cessna 208 Series Aircraft Prod. Liab. Litig.*, 2009 WL 3756980, at *6 (D. Kan. Nov. 9, 2009) (citing *United States v. Mitchell*, 365 F.3d 215, 235 (3d Cir. 2004); *United States v. Taylor*, 154 F.3d 675, 683 (7th Cir. 1998), cert. denied, 525 U.S. 1060 (1998); *In re Indep. Serv. Org. Antitrust Litig.*, 85 F. Supp. 2d 1130, 1163 (D. Kan. 2000)).

[25]*See Daubert*, 509 U.S. at 595 (stating the Court's analysis is on the methodology and principles an expert used, not the conclusions generated). .

grounds for exclusion, and while Plaintiff may disagree with how Dr. Sanders balanced the facts or which facts he relied upon or gave more weight, such disagreements are more appropriately addressed during cross-examination of the witness. The actual location of the POI is an important fact at issue in this case. The fact that experts disagree as to its location goes to weight of his opinion rather than to admissibility. The Court will not exclude Dr. Sanders' opinion based on this contention.

Plaintiff next challenges Dr. Sanders' representation that he biased his findings in Plaintiff's favor, claiming that such a bias is false, and argues that any such opinion testimony to that point should be excluded as misleading. Dr. Sanders noted in his expert report that "to bias the calculations toward giving Mr. Belisle *less* time to react," he based his findings on the assumption that the train was traveling at 50 miles per hour, even though evidence suggested the train may have been traveling at a lesser speed. Plaintiff argues that because Dr. Sanders used the same time period of when the train started sounding its whistle to the time Plaintiff was struck (seven seconds), applying the higher speed to that same time did nothing more than move the train farther away from Plaintiff, which did not give him any less time to react. Plaintiff contends that because this alleged bias is false, any opinions based on this "bias" should be excluded. Defendant failed to respond to Plaintiff's arguments regarding this alleged "bias" in its response.

On this issue, the Court agrees with Plaintiff. It does not appear that there is any basis for Dr. Sanders concluding that his analysis favored Plaintiff to give him less time to react by using the same seven second whistle time. As Plaintiff suggests, using the same seven seconds provided Plaintiff with seven seconds to react whether or not the train was traveling at 50 miles per hour or 10 miles per hour – the reaction time remains the same. To suggest anything different would

mislead the jury, and will not be permitted. Therefore, to the extend Dr. Sanders intends to offer testimony that his opinion was biased in Plaintiff's favor based on speed of the train versus this seven second reaction time, such opinion is excluded.

Lastly, Plaintiff argues that because Dr. Sanders misapplied the human factors principles related to simple and complex reaction time, and improperly excluded the factor of stress, his opinion should be excluded. In support of this contention, Plaintiff relies on an opinion provided through affidavit by his own expert, Dr. Bakken. Dr. Bakken concluded that based on the facts of this case, Plaintiff's decision-making situation resulted in a complex decision that resulted from the presence of multiple known and uncertain stimuli.[26] In addition, Dr. Bakken opines that Plaintiff's work related stress added an additional complexity to his reaction time. Dr. Bakken contends that Dr. Sanders' failure take into account the multiple stimuli presented to Plaintiff was not in compliance with generally accepted human factors principle, nor was it consistent with Dr. Sanders' own past writings. For these reasons, Plaintiff suggests Dr. Sanders' opinion must be excluded. We disagree.

Dr. Sanders' deposition testimony indicates that he was aware of the differences between complex and simple reaction times, and he was also aware of the multiple stimuli that Plaintiff faced during this incident. Dr. Sanders, however, concluded that at the point that the train was at a farther distance from Plaintiff, his decision reaction time may have been more complex based on a number of factors, but as the train moved closer to him, the decision turned to a simple one, which was once Plaintiff realized the train was on Main 1, the decision was to move. Dr. Sanders stated that a person in Plaintiff's position was not going to stand there and analyze at the time why the train was there,

---

[26]Doc. 278 (Affidavit of Gary Bakken).

but instead, would make the more simple decision to respond and move out of the way.

The Court concludes that Dr. Sanders opinion is not outside the generally accepted human factors principles as identified by Plaintiff, rests on a reliable foundation, and is relevant to the task at hand. Dr. Sanders testimony clearly indicates that he considered the multiple factors present, but concluded, based on his opinion of the more limited stimuli at the time the train approached, that Plaintiff's decision to react was simple rather than complex. The fact that Plaintiff or his expert disagrees with Dr. Sanders' conclusion does not subject the opinion to exclusion. Plaintiff may instead raise these issues through vigorous cross-examination or through the presentation of contrary evidence to show any weakness in Dr. Sanders' conclusions. Therefore, we grant Plaintiff's motion with respect to testimony concerning bias in favor of Plaintiff, and deny the motion in all other respects.

### 3. Plaintiff's Motion to Exclude Expert Testimony of Richard VanWagner and Randy Valencia

#### a. Richard VanWagner

Defendant has identified Richard VanWagner as its expert to provide a report on Plaintiff's employability. Plaintiff moves the Court to exclude VanWagner's opinion because he failed to review the entirety of Plaintiff's medical records before reaching his conclusions. Plaintiff also argues that VanWagner's opinion expresses medical opinions, which are clearly outside the scope of his expertise. Plaintiff claims that because there is no foundation for VanWagner's opinion, it must be excluded.

Defendant contends that VanWagner's opinion rests on sufficient foundation to withstand exclusion. Defendant argues that VanWagner obtained considerable medical information, he interviewed Plaintiff personally at Plaintiff's home, reviewed testing performed by Plaintiff's

experts, obtained Plaintiff's vocational and educational history, and observed and described Plaintiff's then-existing medical limitations. Further, Defendant asserts that the process VanWagner used to conduct his evaluation is both standard in the industry and documented in textbooks. Defendant denies that VanWagner's opinion contains medical opinions, noting that throughout his opinion, VanWagner clearly deferred to the opinions of health care professionals. Defendant maintains that VanWagner's opinion is relevant, and the specialized testing he conducted with Plaintiff would be helpful for a jury to understand Plaintiff's vocational abilities. Thus, Defendant claims his report meets the standards of admissibility under both federal rules and *Daubert*.

After reviewing VanWagner's opinion, we find that it rests on facts which enable him to express a reasonably accurate conclusion. The fact that VanWagner may not have exhaustively examined Plaintiff's entire medical file does not render his opinion inadmissible but rather, goes to the weight of his opinion, which Plaintiff can address through cross-examination or presentation of his own evidence.[27] VanWagner's report indicates that it is based on the assumption that Plaintiff will continue to make progress in medical rehabilitation, and recognizes that his primary mode of mobility is with a wheelchair. VanWagner also qualified his findings to the assumption that Plaintiff will achieve satisfactory bowel control, and accounted for Plaintiff's physical limitations when assessing available employment opportunities. As a result, the Court finds Plaintiff's assertions that VanWagner failed to consider Plaintiff's medical and physical limitations are without merit.

Plaintiff's claim that VanWagner's report contains unqualified medical opinions is not, however, entirely without merit. In his report, VanWagner opines:

---

[27]*See Daubert*, 509 U.S. at 596.

[I]t is likely that [Plaintiff] will be able to achieve some degree of ability to ambulate. I base this opinion on my personally using a prosthesis for 34 years and having significant compromising to my remaining LE. I also base this on my knowledge of and trials with more advanced electronic LE prosthetic devices fabricated by Otto Bock and Ossur. Moreover, I base this opinion on [Plaintiff's] considerable progress to date and his disciplined determination. I have attached brief information about Otto Bock's C-Leg and the reader will not that individuals with hemi-pelvectomies have used prosthetic devices made by Otto Bock."[28]

As a vocational expert, VanWagner is not qualified to opine with any degree of medical certainty as to whether Plaintiff will or will not achieve any degree of progress in either ambulating or to any other potential for improvement with respect to Plaintiff's medical or physical limitations. While VanWagner indicates that he is himself a former trauma patient, that experience does not qualify him to express opinions with regard to this Plaintiff's recovery. Thus, VanWagner is precluded from providing an opinion or any testimony relating to his belief that Plaintiff may at some point in the future attain increased mobility.

VanWagner is also precluded from providing an opinion on prosthetic devices or other mobility aids that he has found useful based on his 34 years of experience in using such devices. First, VanWagner's long-term use of prosthetic devices does not in and of itself qualify him as an expert to provide recommendations for such devices for this Plaintiff's use, and neither Defendant nor VanWagner has indicated he is qualified outside of this "use experience" to render such an opinion. However, even if VanWagner was so qualified, such testimony, as indicated, would clearly be based on his specialized knowledge from his use of such devices, and such testimony would be subject to Rule 702 of the Federal Rules of Evidence and Rule 26 of the Federal Rules of Civil Procedure. Because VanWagner was identified as an expert to provide a vocational assessment and

---

[28]Doc. 269-1, p.14 (VanWagner expert report).

not as a prosthetics expert, he is precluded from testifying on that topic.  Accordingly, Plaintiff's

motion is granted in part, and denied in part.

### b. Randy Valencia

Pursuant to Rule 26, Defendant identified Randy Valencia, an employee of Defendant, for

his expertise in railroad operating rules and regulations affecting safety.[29]  Plaintiff's moves to

exclude Valencia's testimony because his opinion is not based on sufficient information or data.[30]

Plaintiff argues that in formulating his opinion, Valencia relied solely on a manual from BNSF and

a packet from Defendant's counsel containing deposition testimony from witnesses Damon Puetz,

Timothy Porter, and Robert Stevenson, a report from the Switching Operation Fatality Analysis

(SOFA) Committee, and various photographs.  Plaintiff contends that Valencia failed to review any

other deposition testimony, review any photographs other than those provided by Defendant's

counsel, and argues there is nothing to indicate that Valencia conducted any of his own research or

investigation into the facts.  Thus, Plaintiff suggests that Valencia's conclusions are mere

assumptions, and his assessment of Plaintiff's role should be excluded.  Plaintiff, however, agrees

that Valencia's testimony regarding the history and content of the rules is admissible.

Defendant denies that Valencia's opinions are mere assumptions, but rather, are sound

conclusions based on Defendant's rules and regulations as applied to the work Plaintiff was tasked

to perform and the manner with which he performed that work.  Defendant contends that the

information provided to Valencia to base his opinions was sufficient, and argues that he was not

---

[29]Defendant has identified Valencia as one of its employees whose duties do not regularly involve giving testimony, and therefore, pursuant to Fed. R. Civ. P. 26(a)(2)(B), was not required to provide an expert report.

[30]Plaintiff does not object to Valencia's qualifications to testify as an expert, but only disputes the factual sufficiency of his opinion.  As a result, we need only address the reliability of Valencia's methodology.

required to review every deposition or photograph taken in this case. In fact, Defendant asserts that the majority of the information which Plaintiff complains Valencia ignored was not necessary for him to reach reasonably accurate conclusions. Defendant again argues that Plaintiff is free to present his own expert testimony on the issues Valencia will opine, and the fact that another expert may disagree with Valencia is not grounds for exclusion.

During his deposition, Valencia testified that he would provide the following testimony based on his review of the information provided to him along with his general knowledge of the accident: (1) the opinion that the work Plaintiff was tasked should have been performed on the field side of the yard of the track where there was no exposure to main traffic; (2) the opinion that not fully understanding where placing an end of train marker also required Plaintiff to place himself alongside of the rail cars on the train he was attaching it; (3) the opinion of why certain warning mechanisms, such as train horn, headlight, and cross warning devices, that would have alerted a person of an oncoming train were not heeded; and (4) the opinion that Plaintiff was alongside the train cars and fouling the track for which the rules require he remain alert and attentive.[31]

Plaintiff maintains that because Valencia reviewed only that information provided him by Defendant's counsel, his opinions are not based on sufficient facts. While an expert's opinion must be based on sufficient facts to be reliable, it need not be based on an exhaustive examination of every fact of the accident.[32] To the extent Plaintiff contends Valencia failed to take into account

---

[31]Doc. 269-4, pp. 135-139 (Valencia Deposition). Plaintiff objected during Valencia's deposition, apparently indicating his belief that the fourth opinion was that of Defendant's counsel. After a review of the transcript, the Court concludes that Valencia sufficiently responded to questioning by Plaintiff to indicate that this was his opinion, not a random opinion of Defendant's counsel, reasonably based on his application of the rules to this accident.

[32]*See Daubert*, 509 U.S. at 596.

certain facts or data that Plaintiff finds important, he can raise those issues through cross-examination or through presentation of his own evidence as they go to the weight of his opinion and not its admissibility. However, with regard to Plaintiff's challenges to the assumptions upon which Valencia relied in reaching his conclusions, the Court will determine whether an appropriate foundation has been put forth for those assumptions at trial upon appropriate objection.

Plaintiff also objects to Valencia providing an opinion that being hit by the train meant that Plaintiff was not paying attention to train movement. Plaintiff argues that there is no reliable evidence to support such a conclusion. Based on the Court's review, we agree. Valencia is not a human factors expert, nor are there any facts that suggest Plaintiff was simply not paying attention. Such an opinion is outside the scope of Valencia's expertise with regard to railroad rules and their application to this accident. Valencia may opine that the rules might require an employee remain alert, but he may not provide any opinion as to whether Plaintiff himself was or was not alert with regard to train movement or warning signs.

Plaintiff also argues that Valencia's testimony should be limited to those opinions he identified during his deposition testimony. Plaintiff contends that because Valencia was not required to produce a written report of his opinions, the only method Plaintiff had to determine what opinions he will testify is through deposition. Because Valencia only identified those four opinions previously identified, he should be limited to only those four opinions. The Court agrees. Valencia's opinion testimony at trial shall be limited to those opinions identified during his deposition and to no others.

Therefore, based on the foregoing, the Court rules that Valencia's conclusions are based on facts that enable him to reach reasonably accurate conclusions, and therefore, we deny Plaintiff's

motion to exclude his opinion testimony in its entirety.

### 4. Defendant's Second Motion in Limine (to exclude the testimony of Plaintiff's experts Mariusz Ziejewski and Paul Bodnar)

#### a. Mariusz Ziejewski

Plaintiff has identified Mariusz Ziejewski as his biomechanical expert. Plaintiff posits that Dr. Ziejewski will provide expert opinion testimony regarding Plaintiff's body's interaction with the locomotive that struck him, to include the distance he believes Plaintiff's body was thrown after impact. Defendant does not challenge Dr. Ziejewski's qualifications as an expert,[33] nor does it challenge the methodology Dr. Ziejewski used to reach his conclusions. Rather, Defendant contends that Dr. Ziejewski's opinions are nothing more than "common sense," and as such, would not assist the jury in understanding the issues presented, warranting exclusion.

Plaintiff responds by asserting that Defendant's arguments misstate Dr. Ziejewski's testimony during deposition, argues that because no witness is able to identify Plaintiff's exact position at the POI, Dr. Ziejewski's testimony is important to establish how the impact of the locomotive with Plaintiff's body affected the distance his body was thrown after the impact. Because the position of Plaintiff's body after the impact is known, such testimony by Dr. Ziejewski will assist the jury in determining the location of the POI, which is a contested fact. Plaintiff claims that Dr. Ziejewski's opinion is not inconsistent with the evidence because no witness can testify as to Plaintiff's exact location at the time of impact. Plaintiff asserts that Dr. Ziejewski's testimony proves that it was impossible for Plaintiff to have been thrown more than a short distance, which will be helpful to a jury in deciding the POI.

---

[33]Defendant states in its motion that Dr. Ziejewski is not qualified as an accident reconstructionist, but does not raise any argument that he conducted such a reconstruction. Therefore, we need not address that issue.

After reviewing the record, we conclude that Dr. Ziejewski's opinion testimony will provide more than "common sense" information to a jury. The POI is a disputed fact in this litigation, and Dr. Ziejewski's opinion could assist the jury in determining Plaintiff's position immediately prior to impact. Although some aspects of how a body reacts to being struck by a train might be obvious to a jury, the manner of how the body may turn and distance it may be thrown based on weights and angles of being struck are not necessarily common sense conclusions. As a result, the Court will not exclude Dr. Ziejewski's testimony, and Defendant's motion is denied.

### b. Paul Bodnar

Paul Bodnar has been identified by Plaintiff to testify as his expert on railroad operations and dispatching. Defendant has moved to exclude Bodnar's testimony because of the improper methods he used to form his opinion. Defendant first claims that Bodnar's opinion is not based on a scientific or specialized nature, and therefore, would not assist a jury in the determination of any issues. Defendant also argues that Bodnar's methodology in which he weighed and evaluated the credibility of witnesses was improper. Defendant asserts through this process, Bodnar completely rejected the testimony of certain witnesses, which impermissibly invades province of the jury. Defendant claims that because Bodnar's conclusions are tainted by his credibility analysis, he should be precluded from testifying.

Defendant also claims that in his report, Bodnar makes improper legal conclusions that invade the province of both the Court and the jury. Defendant further asserts that Bodnar apparently intends to offer opinion testimony that Defendant was in violation of various statutes, rules, and regulations. Defendant argues that it is for the jury to decide whether or not the law as applied to the facts have been violated, not Bodnar. Because experts are not permitted to testify as to legal

conclusions, Defendant claims Bodnar's testimony must be excluded.

Plaintiff denies that Bodnar's opinions express legal conclusions or that they result from an improper determination of witness credibility. Plaintiff asserts that Bodnar's testimony will assist a jury because railroad dispatching and operations are highly specialized and are not within the common knowledge of lay people, noting that such operations are governed by numerous rules and regulations concerning employee conduct and rules and instructions for train dispatchers and control operators. Plaintiff essentially argues that a jury will need the assistance of expert testimony to understand how a railroad employee must act when certain situations occur based on these rule requirements, and asserts Bodnar's opinion testimony should be permitted.

Although Defendant does not directly object to Bodnar's qualifications, in its motion it does refer to Bodnar as an "alleged expert" who is a "self-proclaimed authority on railroad rules and railroad operations."[34] Accordingly, we will first address Bodnar's qualifications to testify as an expert.

### 1. Qualifications of Bodnar

As Bodnar's Curriculum Vitae (CV) and expert report notes, which Defendant does not dispute, Bodnar's background includes 45 years of experience in the railroad industry in which he performed jobs as a block operator, chief train dispatcher, system locomotive power coordinator, operations manager, and manager of train control for various railroads. In addition, he was employed by the U.S. Department of Transportation, Federal Railroad Administration as an operating practices inspector for seven years, and from March 2003 to present, has been working as a consultant for railroad safety and operations. He has experience in train accident investigations

---

[34]Doc. 145, p.11 (Defendant's Memorandum, Second Motion in Limine).

and railroad efficiency testing assessments, has developed railroad radio rules and procedures, and has conducted training on those radio procedures. Bodnar's CV further notes that he is well acquainted with manual and computer assisted train dispatching systems, and has conducted quality assessment audits of railroad locomotive engineer certifications and re-certification programs.

In relevant part, Rule 702 provides that a witness who is qualified by knowledge, skill, experience, training or education may testify in the form of opinion or otherwise as to scientific, technical or other specialized knowledge.[35] Here, Bodnar's report indicates that he intends to testify on railroad operations and dispatching, to include the responsibilities of certain railroad employees when faced with certain situations. Bodnar has extensive experience in these areas, and we have no doubt that he is able to opine on these issues based on this background and specialized training. Therefore, to the extent that Defendant moves to exclude Bodnar's testimony on the basis of his qualifications, we deny its motion.

### 2. Reliability of Bodnar's Methodology

Central to Bodnar's opinion as expressed in his expert report is the premise that Defendant, through certain employees, informed Plaintiff and other crew members that train 760E would be held and would not run through on Main 1. Bodnar, however, refers to this "premise" in his report as if it were an uncontroverted fact, which as stated, is an improper conclusion that invades the province of the jury. Whether or not Plaintiff was informed the train would be held is very much a disputed fact in this case, and determining whether or not that occurred is for the jury to decide. Bodnar is not permitted to tell the jury what the facts are, but instead, must proffer his opinion in a manner in which it is clear to the jury that it is based on his *assumption* that Defendant informed

---

[35]Fed. R. Evid. 702.

Plaintiff that train 760E would be held, and that Plaintiff relied on that information when performing his duties.

Bodnar also opines in section 8 of his report on the train dispatcher's failures that he believes contributed to this accident. Bodnar identifies a number of procedures or general information that the dispatcher should have known and employed during this incident, but in his opinion, failed to accomplish. However, certain aspects of his report concerning the dispatcher's actions once again refers to the controverted fact that Plaintiff and other crew members were told that the train would be held and not run through on Main 1 as if it was undisputed. Again, Bodnar is limited to expressing his opinion, based on his *assumptions* in this regard, as to how the dispatcher's actions, or lack thereof, were not in conformance with railroad procedures.

Section 9 of Bodnar's report concerns Defendant's failure to have car inspectors rather than Plaintiff perform the brake tests and install the ETD. Regarding installation of ETD's on trains and brake inspections, Bodner may testify, based on his specialized experience, education and training, as to how Defendant's procedures may not comport to standard operating procedures within the railroad industry. Bodnar may then provide his opinion on how such inspections and installations should take place under this standard operating procedure; however, he may not testify in a manner that would suggest that Defendant's car department *would* have performed these procedures as a matter of fact, as there is no basis for such testimony. To the extend that Bodner intends to testify contrary to the limitation just discussed, such testimony is excluded.

While Section 10 of Bodnar's report is titled "Poor Lighting and Bad Walking Conditions at the West End Newton Yard," the crux of his opinion relates to Plaintiff's motivations. This testimony is wholly speculative, as it is uncontroverted that Plaintiff has no recollection of the events

concerning this incident.  Accordingly, there is no reliable factual basis for this section of Bodnar's

opinion, and thus, he is precluded from testifying with regard to Section 10 of his report.

Therefore, pursuant to the foregoing, Defendant's motion to exclude the opinion testimony

of Paul Bodnar is granted in part, and denied in part.

### 5. Defendant's Motion for Bifurcation (Doc. 197)

Defendant moves the Court, pursuant to Fed. R. Civ. P. 42(b), to bifurcate the issues of

causation and contributory negligence from the issues of the nature and extent of damages.  Rule

42(b) provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court

may order a separate trial of one or more separate issues...."[36]  "The court has broad discretion in

determining whether to sever issues at trial ."[37]  Generally, "the party seeking bifurcation has the

burden of showing that separate trials are proper in light of the general principle that a single trial

tends to lessen the delay, expense and inconvenience."[38]

Defendant first suggests that efficiency and convenience favor bifurcation, noting that a large

number of witnesses, both expert and non-expert, are designated to testify in this trial.  Defendant

contends that by separating the issues, the second phase may become unnecessary as the jury's

evaluation of causation issues in the first phase may favorable impact settlement negotiations and

eliminate the need for the damages phase of trial.  Defendant also claims that the issues are

separable, and because there would be practically no overlap of expert testimony, bifurcation is

---

[36]Fed. Rule. Civ. P. 42(b).

[37]*Victor Co., L.L. C. v. Ortho Organizers, Inc.*, 1996 WL 704404, at * 1 (D. Kan. Nov. 5, 1996) (citing *Angelo v. Armstrong World Indus., Inc.*, 11 F.3d 957, 964 (10th Cir. 1993)).

[38]*Pulsecard, Inc. v. Discover Card Servs, Inc.*, 1995 WL 769174, at * 1 (D. Kan. Dec. 21, 1995) (citations omitted).

appropriate. Further, Defendant suggests that bifurcation would avoid unfair prejudice. Defendant argues Plaintiff's significant injuries will be readily apparent to the jurors, and it believes that his presence in the courtroom will arouse considerable juror sympathy. Defendant claims that such prejudice could be avoided by preventing the introduction of any descriptions of Plaintiff's injuries and diagnosis until after liability is decided. Defendant contends that holding a single trial setting "would present the very real potential of clouding even a conscientious juror's judgment in this case."[39]

Plaintiff opposes bifurcation on the grounds that evidence of Plaintiff's injuries must be presented to show how this accident occurred, intertwining both liability and damages. Plaintiff claims that due to the number of issues in dispute that give rise to liability, Plaintiff must be able to present evidence regarding his injuries to assist the jury in determining those issues, and therefore, they are inseparable. Plaintiff also argues that Defendant's efficiency claim is misstated, and he is likely to call no more than nine doctors at trial. Plaintiff denies that this is such a lengthy and complex case so as to warrant bifurcation.

After reviewing the parties' briefing, the Court is not convinced that bifurcation is warranted, and therefore, we deny Defendant's motion. We are unpersuaded by Defendant's efficiency arguments, nor do we believe the issues are easily separated. As example, one disputed issue in this case is the location of the POI, and as Plaintiff suggests, evidence with respect to that issue involves detailed testimony on how the train struck Plaintiff, how that impact affected his body, and the purported distance his body traveled after being struck. Bifurcating this trial would, therefore, adversely impact Plaintiff's ability to present his case. Similarly unpersuasive is Defendant's

---

[39]Doc. 198, p.7 (Defendant's Memorandum on Motion for Bifurcation).

argument that it will be prejudiced by such testimony. As Defendant admitted in its briefing, Plaintiff's injuries were such that they will be readily apparent to the jurors. The Court has no doubt that Plaintiff will be present in the courtroom for most, if not all, of the trial. Thus, he will be in view of the jury. And although the internal injuries that Plaintiff sustained will not be visible to the jury, Plaintiff's external injuries will be. Thus, bifurcating the trial will not have any significant impact of preventing the jury from viewing Plaintiff's injuries. Therefore, for the foregoing reasons, we deny Defendant's motion.

Accordingly,

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Exclude the Opinion Testimony of John Michael and John Parmalee (Doc. 262) is hereby GRANTED in part and DENIED in part.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exclude Marc Sanders, Ph.D. (Doc. 266) is hereby GRANTED in part and DENIED in part.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Exclude Richard VanWagner and Randy Valencia (Doc. 268) is hereby GRANTED in part, and DENIED in part.

**IT IS FURTHER ORDERED** that Defendant's Second Motion in Limine (to exclude the testimony of Plaintiff's experts Mariusz Ziejewski and Paul Bodnar) (Doc. 144) is hereby GRANTED in part, and DENIED in part.

**IT IS FURTHER ORDERED** that Defendant's Motion to Bifurcate (Doc. 197) is hereby DENIED.

**IT IS SO ORDERED.**

Dated this 9th day of March, 2010, in Wichita, Kansas.

/s Eric F. Melgren
ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE